UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ISOVOLTA INC.,                              )
    *Plaintiff*,                           )
                                              )
  *vs.*                                       )    1:08-cv-1319-JMS-DML
                                              )
PROTRANS INT'L, INC., *et al.*,              )
    *Defendants.*                          )

**ORDER ON ISOVOLTA AND PROTRANS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Presently before the Court are cross-motions for summary judgment between Plaintiff Isovolta Inc. ("Isovolta") and Defendant ProTrans International, Inc. ("ProTrans"). [Dkts. 167, 180.] ProTrans argues that it is entitled to summary judgment on Isovolta's claim because there are no genuine issues of material fact regarding whether it exercised reasonable care or whether it caused the damage to Isovolta's goods that is the subject of this breach of contract action. [Dkt. 167 at 1.] Isovolta moves for summary judgment "to determine only the issues of contractual duty and breach." [Dkt. 201 at 2 (original emphasis).] Isovolta admits that even if it is successful on the issues it raises, "this case would then proceed to a jury trial of causation and damages." [*Id.*]

## STANDARD

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986).

Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). The non-moving party must set forth specific facts showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. at 323. The key inquiry is the existence of evidence to support a plaintiff's claims or affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

Cross-motions for summary judgment do not automatically mean that all questions of material fact have been resolved. *Franklin v. City of Evanston*, 384 F.3d 838, 842 (7th Cir. 2004). The Court must evaluate each motion independently, making all reasonable inferences in favor of the nonmoving party with respect to each motion. *Id.* at 483.

Isovolta and ProTrans primarily agree on the underlying facts. [*See, e.g.*, dkt. 196 at 3 ("ProTrans does not dispute the 'facts' asserted in Isovolta's Cross-Motion Brief.").] Their main disputes focus on whether or not those facts show that ProTrans breached the parties' contract and, if so, whether that breach was a responsible cause of the damage to Isovolta's goods. To the minimal extent the parties disagree on the underlying facts, the Court will construe them in favor of Isovolta when ruling on ProTrans' motion and in favor of ProTrans when ruling on Isovolta's motion.

**BACKGROUND**

Unless otherwise noted, the following facts are undisputed. In September 2006, Isovolta and ProTrans entered into a contract for ProTrans to store Isovolta's goods. [*See* dkt. 34-1.] In March 2008, an emergency sprinkler head activated in the absence of fire in a warehouse that

ProTrans leased from non-party Farias Development, Ltd. ("Farias") in Laredo, Texas.[1] [Dkts. 174 at 3-4; 181 at 8.] Water doused Isovolta's goods, which were rolls of a laminate product known as "Voltaflex" that can be used to insulate and protect the component parts of electric motors. [Dkt. 169-5 at 6-7, 30-32.] The warehouse was not continuously monitored, and no alarm sounded to indicate that a sprinkler head had activated. [Dkt. 182-13 at 4, 5.]

A nighttime guard saw water coming out of a dock door between 11:00 and 11:30 p.m. and discovered that the sprinkler had activated. [Dkts. 182-16 at 3; 182-13 at 4.] The water was shut off approximately two hours after the guard discovered it. [Dkt. 182-15 at 8.]

ProTrans and Isovolta dispute how quickly Isovolta's goods were ruined. ProTrans emphasizes that up to 100 gallons of water per minute could discharge from an open sprinkler head, [dkt. 169-6 at 37], and argues that Isovolta's product is "extremely sensitive to moisture and . . . cannot be salvaged if even a small amount of water penetrates the shrink-wrap in which it is packaged," [dkt. 174 at 14]. Isovolta emphasizes that its goods were packaged in plastic shrink-wrap, individually bagged with waterproof material, and topped with a plywood header to protect them from moisture. [Dkt. 182-20 at 6-8.] Isovolta believes that damage to its product would have been minimized if the sprinkler system had been turned off earlier or if ProTrans had taken steps to prevent water from permeating the packaging after discovering the leak. [Dkts. 181 at 16-17; 166 at 41.] ProTrans believes that its behavior after the sprinkler activation is "irrelevant" because of how sensitive Isovolta's product was to water. [Dkt. 174 at 14.]

The reason why the sprinkler activated is unknown at this time, but ProTrans and Isovolta agree that the company that installed the sprinklers—former Defendant Firecheck of Texas, Inc. ("Firecheck")—used the "wrong sprinkler head type." [Dkts. 174 at 14; 183 at 2.] This may

---

[1] Defendant Tyco Fire Products LP ("Tyco") manufactured the sprinkler head at issue.

have led to the sprinkler being exposed to temperatures beyond those recommended by applicable ordinances and the manufacturer, which could have caused the sprinkler to fail. [Dkt. 174 at 14.]

## DISCUSSION

### I. Isovolta's Breach of Contract Claim against ProTrans

Both Isovolta and ProTrans spend portions of their respective briefs framing Isovolta's claim as a negligence claim. [*See, e.g.*, dkts. 183 at 11 (Isovolta discussing the law surrounding "negligence actions"); 195 at 2 (ProTrans referring to "a black-letter element of [Isovolta's] negligence claim").] Although the bailment contract between the parties incorporates a common law negligence standard, this Court has recently held that

> Isovolta's claim constitutes a breach of contract claim. The contract memorialized the parties' relationship and specified, among other things, the applicable standard of care that governed ProTrans' possession of Isovolta's goods—a common law negligence standard. If ProTrans failed to comply with the standard of care for which the parties contracted, it breached the contract and is liable for that breach.
>
> ***
>
> The Court has already held that the contract did not create absolute liability for ProTrans, that ProTrans has produced sufficient evidence from which a jury could reasonably infer that it was not negligent, and that the burden has shifted to Isovolta to prove its claim. [Dkt. 79 at 9.] Therefore, Isovolta must prove to the jury that ProTrans breached the contract, which will require Isovolta to prove that ProTrans failed to satisfy the negligence-based standard of care incorporated in the contract.

[Dkt. 203 at 4, 6.]

To recover damages from ProTrans for its breach of contract claim, Isovolta must prove by the greater weight of the evidence that (1) the parties entered into a contract; (2) Isovolta performed its part of the contract; (3) ProTrans failed to perform its part of the contract or performed in a defective manner; (4) ProTrans' breach of contract damaged Isovolta; (5) the parties

- 4 -

reasonably anticipated those damages when they entered into the contract; and (6) ProTrans'
breach of contract was a responsible cause of those damages. *See* Ind. Model Civil Jury Instructions 3309 (2010) ("Breach of Contract -- Elements -- Burden of Proof"). Keeping in mind these breach of contract elements, the Court turns to the parties' arguments on summary judgment.

## II. ProTrans' Motion for Summary Judgment

ProTrans argues that it is not liable for the damage to Isovolta's goods because there is no question that it exercised reasonable care over Isovolta's goods and Isovolta cannot prove that any act or omission of ProTrans caused the damage to its goods. [Dkt. 174 at 9-15.] The parties dispute whether ProTrans had duties under the local laws and ordinances to maintain and repair the sprinkler system and whether ProTrans' conduct after the incident caused any of the damage to Isovolta's goods.

### A. Duty to Exercise Reasonable Care

#### 1. ProTrans' Contract with Farias

The parties agree that ProTrans had a contractual duty to exercise reasonable care over Isovolta's goods. ProTrans argues that it is entitled to summary judgment because there is no question that it exercised reasonable care by storing Isovolta's goods in new warehouse and contracting with the warehouse's owner—Farias—to maintain and repair the warehouse's fire protection system. [Dkt. 174 at 2, 10-13.]

ProTrans designates a contract (the "<u>Lease Agreement</u>") it had with Farias and directs the Court to the definition of "Common Areas," which includes the "fire protection systems." [Dkt. 169-1 at 15 § 10.1.] ProTrans emphasizes that Farias agreed to "operate, maintain and repair the Common Areas" in the Lease Agreement. [*Id.* at 16 § 10.5.] ProTrans argues that the Lease Agreement is unambiguous and that Farias assumed full responsibility for the maintenance and

repair of the warehouse fire protection system, thereby fulfilling ProTrans' obligations to Isovolta.[2] [Dkt. 174 at 11-12.]

Even if the Lease Agreement between ProTrans and Farias unambiguously places the duty to maintain and repair the warehouse fire protection system exclusively on Farias, ProTrans could still be liable to Isovolta for breach of contract. In its contract with Isovolta, ProTrans agreed to be "responsible for ongoing maintenance to facilities and equipment so as to assure the quality of service and reasonable care of the customer goods contained in the facility." [Dkt. 34-1 at 8.] Unbeknownst to Isovolta, ProTrans contracted with another party to fulfill that obligation. As Isovolta points out, there is no evidence that ProTrans checked to make sure that Farias was testing and maintaining the fire suppression system. [Dkt. 181 at 15.] Therefore, even if ProTrans contracted with Farias to maintain and repair the fire suppression system in the warehouse, questions of material fact exist for the jury to decide. For example, a jury might conclude that ProTrans' decision to contract with Farias was consistent with its contract with Isovolta, or it might not. Moreover, a jury might conclude that ProTrans' decisions were a responsible cause of Isovolta's loss, or it might not. Based on the evidence of record, issues of material fact exist that must be left for a jury to decide.

## 2. NFPA 25

At the time the sprinkler erroneously activated, the Laredo Fire Code incorporated the 2006 International Fire Code, which in turn incorporated the 2002 edition of the National Fire Protection Association ("NFPA 25"). [Dkts. 196 at 4.] NFPA 25 details various standards for

---

[2] Isovolta emphasizes Section 9.2(A) of the Lease Agreement, which provides that "[ProTrans] shall be responsible for the cost of all aspects of repair and maintenance of the Premises including but not limited to . . . fire protection systems . . . ." [Dkt. 169-1 at 12 § 9.2(A).] Section 9.2(A) makes ProTrans responsible for the cost of the repair and maintenance, not for the repair and maintenance itself.

inspecting, testing, and maintaining a building's fire protection system. [Dkt. 197-1.] The parties dispute whether NFPA 25 imposed any duties on ProTrans to inspect or maintain the fire system in the warehouse.

ProTrans argues that NFPA 25 did not impose any duties on it because it only imposes duties on the owner of a building, which was Farias. [Dkt. 174 at 13.] ProTrans admits, however, that Firecheck installed the "wrong sprinkler head type (which may have led to routine exposure of the sprinkler head to temperatures beyond those required by NFPA)." [Dkts. 174 at 14.] Regardless of whether NFPA 25 imposed duties on ProTrans to perform certain maintenance, inspections, or repairs on the fire suppression system in the warehouse, the jury will have to decide whether ProTrans' decision to store Isovolta's goods in a warehouse that it now agrees contained the wrong sprinkler type breached its contract with Isovolta. In other words, even if NFPA 25 did not impose duties on ProTrans, ProTrans may have breached its contract with Isovolta by storing Isovolta's goods in a non-compliant warehouse. Although ProTrans can argue that it fulfilled its duties by delegating the sprinkler repair and maintenance to Farias, as detailed above, the jury will have to determine whether ProTrans' decision to rely on Farias either with due diligence or lack thereof breached ProTrans' contract with Isovolta and was a responsible cause of Isovolta's loss.

### 3. ProTrans' Response to the Incident

ProTrans admits that it could be responsible for Isovolta's damages if it "was negligent in <u>responding</u> to the discharge in a way that caused the damage to the goods." [Dkt. 195 at 9 (original emphasis).] ProTrans argues, however, that the manner in which it responded to the incident is "irrelevant" because Isovolta's product was "extremely sensitive to moisture and, according to Isovolta, cannot be salvaged if even a small amount of water penetrates the shrink-wrap in which

it is packaged." [Dkt. 174 at 14.] ProTrans argues that water flowed very quickly from the open sprinkler, allowing it to come into contact with Isovolta's goods "almost instantaneously." [Dkt. 174 at 15.]

It is undisputed that between 11:00 and 11:30 p.m. on the night in question, a nighttime guard discovered that the sprinkler had activated, but the water was not shut off until approximately two hours later. [Dkts. 182-16 at 3; 182-13 at 4; 182-15 at 8.] ProTrans did not try to dry off Isovolta's product or move the pallets containing the goods to a dryer area until the following morning. [Dkt. 182-19 at 2.]

ProTrans and Isovolta dispute how quickly Isovolta's product was damaged. ProTrans designates the testimony of Hal Wychopen, the vice-president of Firecheck, who described the warehouse fire suppression system as using a "high volume discharge" that would "overpower" heat or fire.[3] [Dkt. 169-6 at 21-22.] ProTrans emphasizes that Isovolta "err[ed] on the side of caution" and declared rolls of Voltaflex to be a loss if it observed water on the exterior of the packaging. [Dkt. 169-5 at 49.] ProTrans argues that this is an admission by Isovolta that its goods were "immediately ruined." [Dkt. 195 at 15.]

The jury will have to decide whether Isovolta's procedure for declaring its products to be ruined constitutes an admission by Isovolta that all of its goods were immediately ruined. An email from ProTrans to Isovolta the morning after the incident informed Isovolta that "only one pallet seems to be completely wet (rolls are lying down). The rest of the pallets, only the bottom portion is wet." [Dkt. 182-19 at 2.] This indicates that ProTrans believed that at least some of Isovolta's product may have been salvageable the morning after the incident. Neither party de-

---

[3] Although Mr. Wychopen's testimony describes the fire suppression system in general terms, he did not testify about Isovolta's goods, the amount of water that flowed onto Isovolta's goods, or the effect the water had on Isovolta's goods.

signates evidence regarding the amount of Isovolta's goods that were ultimately declared a loss or if any were deemed salvageable. If any of the goods were deemed salvageable, this would also undercut ProTrans' argument that Isovolta's goods were immediately ruined.

ProTrans' response to the sprinkler activation is relevant because, as ProTrans admits, it can be liable to Isovolta if its response was negligent. Based on the evidence designated on summary judgment, there are issues of material fact regarding ProTrans' response to the sprinkler activation and any damage that may have resulted from ProTrans' delayed response. To recover under this theory, Isovolta must prove that ProTrans' delayed response breached the parties' contract and was a substantial factor in bringing about Isovolta's damages. This is a question for the jury to decide.

### B. Causation

ProTrans also moves for summary judgment on the grounds that it "is not liable for the damage to Isovolta's goods because ProTrans did not cause the [sprinkler] discharge." [Dkt. 174 at 9, 14-15.] ProTrans emphasizes that Isovolta blames Tyco (the manufacturer) and Firecheck (the installer) for causing the sprinkler to erroneously activate but does not blame ProTrans. In sum, ProTrans believes it is entitled to summary judgment because "Isovolta cannot show that any act or omission or ProTrans caused the damage at issue." [Dkt. 174 at 14 (original emphasis).]

Causation is an essential element of liability in a breach of contract claim. *Shepard v. State Auto. Mut. Ins. Co.*, 463 F.3d 742, 744 (7th Cir. 2006) (applying Indiana contract law). Thus, a plaintiff must prove that the alleged breach of contract was a responsible cause of its loss, which requires the plaintiff to show that the breach was a "substantial factor" in bringing about its damages. *Id.* Causation is normally a question of fact for the jury. *Id.*

ProTrans fails to acknowledge that while it may not have manufactured or installed the sprinkler, as Isovolta points out, it contracted with Isovolta to "provide an adequate, clean, and well-maintained facility" and to be "responsible for ongoing maintenance to facilities and equipment so as to assure the quality of service and reasonable care of the customer goods contained in the facility." [Dkt. 34-1 at 8.] If ProTrans negligently performed these provisions of the contract and that breach was a responsible cause of the damage to Isovolta's goods, ProTrans is liable to Isovolta for the damage the parties anticipated when they entered into the contract.

It is a question of fact for the jury to decide whether ProTrans breached its contract with Isovolta by contracting with Farias to maintain and repair the fire system and, if so, whether that breach was a responsible cause of Isovolta's loss. In other words, although ProTrans may not have been the party to manufacture or install the wrong sprinkler type, it did make the decision to contract with Farias (unbeknownst to Isovolta) for Farias to maintain and repair the sprinkler system and there is no evidence of record of oversight. Based on the evidence in this record, and making all reasonable inferences in favor of the non-movant Isovolta as the Court is required to do, a jury could decide that ProTrans' conduct breached the contract with Isovolta and was a responsible cause of Isovolta's loss. Causation is normally a question of fact for the jury, and ProTrans does not convincingly argue why this case is an exception to that rule.

For these reasons, ProTrans' motion for summary judgment is denied. Because ProTrans' motion is denied, the Court need not address the argument that ProTrans is entitled to recover attorney fees as a "prevailing party" under its contract with Isovolta. [Dkt. 174 at 15-16.]

### III. Isovolta's Motion for Summary Judgment

Isovolta emphasizes that its motion "seeks to determine only the issues of contractual duty and breach. Should the issues of duty and breach be established in Isovolta's favor, this case

would then proceed to a jury trial of causation and damages." [Dkt. 201 at 2 (original emphasis).] ProTrans' response and surreply focus almost exclusively on its causation arguments, which the Court has already addressed.

### A. Procedural Propriety of Isovolta's Motion

As an initial matter, ProTrans emphasizes that this is Isovolta's third summary judgment motion and argues that it should be "denied as a procedurally improper second bite at the summary judgment apple." [Dkt. 196 at 10.] ProTrans cites a case from this district for the proposition that "summary judgment is not tantamount to a game of preschool T-Ball allowing [litigants] to keep swinging until they hit the ball (with advice from the Court after each miss)." *Badger v. Greater Clark County Schs*, 2005 U.S. Dist. LEXIS 10816, *3 (S.D. Ind. 2005).

*Badger* is distinguishable from the case at bar because the party who lost summary judgment in *Badger* "appears to have [considered the Court's prior opinion] only as an advisory opinion on the basis of which subsequent discovery and renewed briefing have culminated in the current motion." *Id.* at *3. ProTrans does not assert that Isovolta used the Court's September 2009 order as an advisory opinion to conduct subsequent discovery. Moreover, each of Isovolta's motions has been materially different. Isovolta's first motion resulted in the Court's September 2009 order holding that the parties' contract incorporated a common law negligence standard. [Dkt. 79.] Isovolta's second motion resulted in an order allowing ProTrans to assert certain fault-based affirmative defenses to the extent ProTrans argues it is wholly without fault. [Dkt. 203.] Isovolta's third motion, which is the subject of this opinion, concerns substantive elements of its breach of contract claim.

Isovolta acknowledges the Court's previous order as law of the case and does not ask the Court to reconsider its holding. [Dkts. 181 at 2; 201 at 4.] While the Court prefers that a party

raise all of its bases for summary judgment in one motion, this is not a basis for the Court to procedurally deny Isovolta's motion at this time.

### B. Duty and Breach

Isovolta argues that ProTrans had a contractual duty of care to supply an adequate, well-maintained facility and to keep Isovolta's goods dry. [Dkt. 181 at 11-12.] Isovolta argues that ProTrans breached these contractual duties by not keeping the warehouse up to fire code standards, [*id.* at 12-14], by failing to inspect and maintain the fire protection system, [*id.* at 14-16], and by failing to guard Isovolta's goods from water, [*id.* at 16-20.] Isovolta argues that ProTrans should have had working cameras in the warehouse to watch for water, should have kept an audible alarm in working order to alert if it the sprinkler activated, and should have dried off Isovolta's goods before morning following the incident.[4] [*Id.* at 17-20.]

ProTrans does not directly respond to Isovolta's arguments regarding duty and breach. Instead, ProTrans again asserts its argument that Isovolta "cannot prove a causal link between ProTrans' conduct and the [sprinkler] discharge." [Dkt. 196 at 12.] ProTrans reiterates the arguments it asserted in its own summary judgment motion—that it did not cause the sprinkler to activate, that it was not responsible for maintaining or repairing the system pursuant to the Lease Agreement with Farias, and that its response to the incident is irrelevant because Isovolta's product came into contact with the water "almost instantaneously." [Dkt. 196 at 12-17.] Even after Isovolta clarified on reply that its motion does not seek summary judgment on causation, ProTrans' surreply focuses exclusively on the issue of causation and how causation is a requisite for Isovolta to prove liability. [*See, e.g.*, dkt. 202 at 5 ("If proof of duty and breach established lia-

---

[4] The Court has already determined that issues of material fact exist regarding ProTrans' responsibility for keeping the warehouse compliant with local ordinances and whether ProTrans' response to the incident was negligent and a responsible cause for Isovolta's loss.

- 12 -

bility without need to show causation, ProTrans would in essence be rendered strictly liable for the damage to Isovolta's goods, a position expressly rejected by the Court over a year ago.").]

The Court agrees with ProTrans that Isovolta must prove causation to succeed on its breach of contract claim. *See Shepard*, 463 F.3d at 744 ("Under Indiana law . . . causation is an essential element of liability in a breach of contract claim."). However, the Court has already determined that ProTrans is not entitled to summary judgment on its causation arguments. *See supra* Part II.B. Whether ProTrans breached the duties it assumed in its contract with Isovolta is a separate question to which ProTrans does not directly respond.

Nevertheless, Isovolta is not entitled to summary judgment. The parties' contract sets forth the duties for which ProTrans was responsible. As the Court has previously held, the contract incorporates a common law negligence standard that requires the Court (and the jury) to look at ProTrans' conduct through a negligence lens. Whether ProTrans breached its contractual duties to Isovolta by not having a camera monitoring the warehouse or a working alarm to sound when the sprinkler activated are questions of fact for the jury to decide. Isovolta is not entitled to summary judgment on its theories for the same reason that ProTrans is not entitled to summary judgment on its reasonable care and causation theories. Instead, the jury must hear the parties' evidence and argument regarding ProTrans' duties under the contract, what ProTrans did to protect Isovolta's goods, and what damage resulted. The jury must then decide whether, based on the evidence, ProTrans fulfilled its contractual duties through the exercise of reasonable care and, if not, whether its breach was a responsible cause of Isovolta's damages.

At the summary judgment stage, the Court must decide whether Isovolta has admissible evidence to support its claim and whether ProTrans has admissible evidence to support its de-

fenses. Because both parties have admissible evidence and there are numerous fact issues to be decided by a jury, summary judgment is inappropriate.

## CONCLUSION

For the reasons detailed herein, ProTrans' motion for summary judgment and Isovolta's motion for summary judgment are both **DENIED**. [Dkts. 167, 180.] While the Court points out by way of example various issues of material fact that will be left for a jury to decide, additional issues of material fact may exist between ProTrans and Isovolta that are not addressed by the parties in their briefing or by the Court in this Order.

01/13/2011

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Scott J. Brown
CASSIDAY SCHADE LLP
sjb@cassiday.com

Braden Kenneth Core
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
bcore@scopelitis.com

Eric K. Habig
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
ehabig@scopelitis.com

Lia M. Hanson
STUART & BRANIGIN LLP
lmh@stuartlaw.com

Katharine Hoyne Hosty
CASSIDAY & SCHADE LLP
khh@cassiday.com

Brent Emerson Inabnit

SOPKO NUSSBAUM INABNIT & KACZMAREK
brenti@sni-law.com

William P. Kealey
STUART & BRANIGIN
wpk@stuartlaw.com

Brandon J. Kroft
CASSIDAY SCHADE LLP
bjk@cassiday.com

John Mathews Stuckey
STUART & BRANIGIN LLP
jms@stuartlaw.com

Emily J. O. Sullivan
SHOOK HARDY & BACON L.L.P.
ejsullivan@shb.com

R. Kent Warren
SHOOK HARDY & BACON LLP
rwarren@shb.com

Stanley Yorsz
BUCHANAN INGERSOLL & ROONEY PC
stanley.yorsz@bipc.com