UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ISOVOLTA INC., ) | |
|     *Plaintiff*, ) | |
| ) | |
| *vs.* ) | 1:08-cv-1319-JMS-DML |
| ) | |
| PROTRANS INT'L, INC., *et al.*, ) | |
|     *Defendants.* ) | |

**ORDER ON ISOVOLTA'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING TYCO'S DUTY OF CARE**

Presently before the Court is Plaintiff Isovolta Inc.'s ("Isovolta") Motion for Partial Summary Judgment regarding Defendant Tyco Fire Products, LP's ("Tyco") Duty of Care, in this action involving water damage to stored goods following the unexpected discharge of a fire sprinkler. [Dkt. 146.] Isovolta asserts that Tyco "had a duty of care to refrain from selling the sprinkler model [at issue] to Tyco's target warehouse construction market in Texas, due to the foreseeable risk that the model would be improperly and illegally deployed and fail." [Dkt. 147 at 2.] For the reasons detailed herein, the Court denies Isovolta's motion.

## I.
### STANDARD

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch*, 593 F.3d 529,

533 (7th Cir. 2010). The non-moving party must set forth specific facts showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. at 323. The key inquiry is the existence of evidence to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

## II.
### BACKGROUND

The following facts are undisputed. In March 2008, a sprinkler head in a warehouse in Laredo, Texas, where Isovolta's goods were stored activated in the absence of fire, damaging Isovolta's goods. [Dkts. 147 at 5; 163 at 2.] Tyco manufactured the sprinkler head at issue—an ESFR-17 with a 165-degree temperature rating.[1] [Dkts. 147 at 6; 163 at 3.] Tyco describes the operation of an ESFR-17 as follows: "The fusible link assembly is comprised of two link halves which are joined together by a thin layer of solder. When the rated temperature is reached, the solder melts and the two link halves separate, which then allows the sprinkler to activate and flow water." [Dkt. 148-6 at 45.]

A 165-degree temperature rating is classified as "ordinary" in the applicable edition of standards set forth by the National Fire Protection Association ("NFPA"). [Dkts. 147 at 6; 163 at 3.] There is a risk that an ordinary ESFR-17 will activate without a fire when installed in an environment where the temperature exceeds 100 degrees. [Dkt. 148-7 at 18.] For that reason, ordinary ESFR-17 sprinkler heads should not be installed in warehouses where interior temperatures routinely exceed 100 degrees. [Dkt. 163 at 5.]

Tyco also manufactures a 212-degree version of the ESFR-17 sprinkler head that is classified as "intermediate" by the NFPA. [Dkts. 147 at 8; 163 at 4; 148-7 at 6.] The 212-degree

---

[1] All temperatures are in Fahrenheit.

version is interchangeable with the ordinary ESFR-17, [*id.*], but the intermediate version is designed for use where there is a "heat issue" and the consumer needs it for "higher ambient temperatures," [dkt. 148-6 at 19].

Tyco's target market for the ESFR-17 is storage buildings that have "over 25 foot high-piled storage." [Dkt. 148-6 at 18.] Each sprinkler head is sold in a box that contains a technical data sheet. [Dkt. 163-1 at 36.] The technical data sheet references the installer warning and cautions that "improper handling and installation can permanently damage a sprinkler system or its components and cause the sprinkler to fail to operate in a fire situation or cause it to operate prematurely." [Dkt. 163-1 at 39.] The installer warning cautions that overheating "will damage the sprinkler by weakening the thermal sensing element resulting in premature activation." [Dkt. 163-1 at 49.] It also contains a chart showing that a sprinkler with a 165-degree temperature rating has a maximum ceiling temperature of 100 degrees. [*Id.*]

Former Defendant Firecheck of Texas, Inc. ("Firecheck") installed the 165-degree version of ESFR-17 in the Laredo warehouse. The warehouse is not air-conditioned. [Dkts. 147 at 6; 163 at 2.] Both parties agree that the temperature in the Laredo warehouse routinely exceeded 100 degrees and that Firecheck should have installed the 212-degree version of the ESFR-17 in the warehouse instead of the 165-degree version. [Dkts. 147 at 9; 163 at 5.]

### III.
#### DISCUSSION

A. **Tyco's Procedural Challenge**

As a preliminary matter, Tyco argues that Isovolta's motion is procedurally improper and should be denied because it is not dispositive of any claim. [Dkt. 163 at 9.] Tyco cites a string of cases from other jurisdictions holding that summary judgment is inappropriate on single issues of elements that will not dispose of a claim. *See, e.g.*, *Doty v. Sun Life Assur. Co.*, 2009 U.S.

Dist. LEXIS 92287 *4 (S.D. Tex. 2009) (denying motion for partial summary judgment because Rule 56 "does not contemplate partial summary judgment as to portions of a single claim" that "will not materially expedite the adjudication"); *SEC v. Thrasher*, 152 F. Supp. 2d 291, 295 (S.D.N.Y. 2001) ("The plain language of Federal Rule of Civil Procedure 56 indicates that it is not appropriate to use summary judgment as a vehicle for fragmented adjudication of non-determinative issues."); *Arado v. Gen. Fire Extinguisher Corp.*, 626 F. Supp. 506, 509 (S.D. Ill. 1985) (agreeing with another district court that Rule 56(a)'s "reference to 'all or any part' of a claim . . . authorizes only the granting of appealable 'judgments' disposing of entire claims).

The cases Tyco cites no longer represent good law. Rule 56 of the Federal Rules of Civil Procedure was amended effective December 1, 2010 and now expressly recognizes "partial summary judgment." Rule 56(a) provides that a party "may move for summary judgment, identifying each claim or defense—<u>or the part of each claim or defense</u>—on which summary judgment is sought." (Emphasis added.) The Supreme Court has ordered that the changes to Rule 56 (and the other changes to the Federal Rules) be applied to pending cases "insofar as just and practicable." Tyco has not asserted that it would be unjust or impracticable to apply the new version of Rule 56 here. Moreover, Tyco is not adversely affected by the Court's consideration of the merits of Isovolta's motion because, as detailed below, the Court denies Isovolta's motion on substantive grounds. Therefore, the Court will proceed to the merits of Isovolta's partial summary judgment motion.

### B.   Isovolta's Proposed Duty for Tyco

Isovolta argues that Tyco has subjected itself to a duty of care that "extends to the point of product deployment" by marketing and selling the 165-degree ESFR-17 in the southern Texas warehouse market. Specifically, Isovolta contends that Tyco has a "duty of care to keep 'ordi-

nary' ESFR 17 sprinkler heads out of the market so that they do not end up illegally installed in a warehouse such as the ProTrans Laredo Warehouse." [Dkt. 147 at 11.]

The parties agree that Texas law governs the substantive aspects of their dispute. Isovolta does not point to any Texas law imposing the duty it seeks to impose on Tyco. Both parties cite *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170 (Tex. 2004), for the standard to determine whether a common law duty should be imposed on a product manufacturer. [Dkts. 147 at 3; 163 at 13.] In *Humble Sand*, the Texas Supreme Court looked to "the broader industrial setting." 146 S.W.3d at 173. "[C]onsiderations include social, economic, and political questions and their application to the facts at hand" that require weighing "the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Id.* at 182. Another consideration is "whether one party would generally have superior knowledge of the risk or a right to control the actor who caused the harm." *Id.*

Isovolta argues that Tyco is bound by its proposed duty because Tyco foresaw the risk that ordinary ESFR-17 sprinklers could malfunction if installed in warehouses that exceed 100 degrees. [Dkt. 147 at 10.] Nevertheless, Isovolta argues that Tyco still marketed the ESFR-17 to those areas and did not prevent its sprinklers from being installed there. [*Id.*] Isovolta contends that because installing ordinary ESFR-17 sprinklers in a warehouse that could exceed 100 degrees violates NFPA 13, Tyco had a duty to keep that product out of the Laredo market.[2] [Dkt.

---

[2] Isovolta also argues that Tyco has chosen to subject itself to the proposed duty of care because it considers itself a market leader and its employees have served on committees that establish the NFPA standards. [Dkt. 147 at 9-10.] Isovolta does not cogently develop this argument, however, and cites no supporting case law. Additionally, if the Court concluded that Tyco is bound by the proposed duty simply because its members serve on committees that establish the standards, that would contradict the sentiment of *Humble Sand* by discouraging leaders from being involved in organizations designed to better the industry.

147 at 11.]

Tyco argues that the duty Isovolta seeks to impose is "industry crippling" and "an impossibility." [Dkt. 163 at 2, 14.] Tyco does not dispute that ordinary ESFR-17 sprinklers can prematurely activate if installed in warehouses that exceed 100 degrees. For that reason, Tyco specifically warns installers about that risk. [Dkt. 163-1 at 39, 49.] Isovolta does not acknowledge Tyco's installer warnings. Even more significantly, Isovolta does not allege that the warnings are inadequate.

Additionally, as Tyco points out, some warehouses in Laredo are air-conditioned or refrigerated. [Dkts. 163 at 12; 148-4 at 7-8.] In those warehouses, an ordinary ESFR-17 could be installed in compliance with NFPA 13. [*Id.*] Isovolta does not respond to Tyco's argument or acknowledge this possibility.

Finally, Tyco notes that the majority of its products are sold to a distributor who later sells them to an installer. [Dkt. 163 at 6.] Therefore, Tyco is frequently without knowledge about the ultimate destination of its products. Isovolta cites no case law and gives no convincing policy reasons for requiring Tyco to follow each sprinkler head through the chain of commerce to confirm that it is ultimately installed in a compliant manner.

Tyco's arguments prevail under the *Humble Sand* standards. Under the circumstances presented here, the economic consequence of requiring Tyco to monitor the ultimate destination of its products is untenable. Tyco should not have a duty to create a "placement division" whose function is to ensure proper use of its product. This is particularly so where, as here, a professional installer chose the type of product (and was sued and settled the claim) and where a distributor sells the product without giving any information to Tyco about its destination. With respect to the risk factor, Tyco's product contains a warning, the adequacy of which is not chal-

lenged. That warning equalizes the knowledge that all parties in the chain of distribution have regarding the risks inherent in using the 165-degree ESFR-17 in a warehouse such as the one in question. For these reasons, the Court concludes that Tyco does not have the duty proposed by Isovolta, and Isovolta's motion is denied.

## CONCLUSION

For the forgoing reasons, the Court **DENIES** Isovolta's Motion for Partial Summary Judgment Regarding Tyco's Duty of Care. [Dkt. 146.]

01/19/2011

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Scott J. Brown
CASSIDAY SCHADE LLP
sjb@cassiday.com

Braden Kenneth Core
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
bcore@scopelitis.com

Eric K. Habig
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
ehabig@scopelitis.com

Lia M. Hanson
STUART & BRANIGIN LLP
lmh@stuartlaw.com

Katharine Hoyne Hosty
CASSIDAY & SCHADE LLP
khh@cassiday.com

Brent Emerson Inabnit
SOPKO NUSSBAUM INABNIT & KACZMAREK
brenti@sni-law.com

William P. Kealey
STUART & BRANIGIN
wpk@stuartlaw.com

Brandon J. Kroft
CASSIDAY SCHADE LLP
bjk@cassiday.com

John Mathews Stuckey
STUART & BRANIGIN LLP
jms@stuartlaw.com

Emily J. O. Sullivan
SHOOK HARDY & BACON L.L.P.
ejsullivan@shb.com

R. Kent Warren
SHOOK HARDY & BACON LLP
rwarren@shb.com

Stanley Yorsz
BUCHANAN INGERSOLL & ROONEY PC
stanley.yorsz@bipc.com