UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ISOVOLTA INC., <br>     *Plaintiff*, | ) <br> ) <br> ) | |
| *vs.* | ) | 1:08-cv-1319-JMS-DML |
| | ) | |
| PROTRANS INT'L, INC., <br>     *Defendant*. | ) <br> ) <br> ) | |

**ORDER ON ISOVOLTA'S MOTION FOR ATTORNEY FEES AND COSTS**

Presently pending before the Court is Plaintiff Isovolta Inc.'s ("Isovolta") Motion for Attorney Fees and Costs. [Dkt. 308.] A jury awarded Isovolta $6,500 on a breach of contract claim against Defendant ProTrans International, Inc. ("ProTrans"). Isovolta now requests $348,796.58 in attorney's fees, $61,605.58 in costs,[1] and $15,000 in anticipated attorney's fees pursuant to the fee-shifting provision in its contract with ProTrans.

**I.**
**BACKGROUND**

Isovolta paid ProTrans for both the right to store goods in a Texas warehouse that ProTrans leased from a non-party and for related storage services. In March 2008, one of the warehouse's emergency sprinklers activated in the absence of fire, dousing Isovolta's goods with water and damaging them. In the weeks that followed the incident, two other sprinklers malfunctioned in areas without any Isovolta goods.

A written contract (the "Services Agreement") governs the relationship between Isovolta and ProTrans and provides, in relevant part, that ProTrans "'shall not be liable for any loss or

---

[1] The costs Isovolta requests in this motion are separate from the Bill of Costs it submitted pursuant to Federal Rule of Civil Procedure 54(d). [Dkt. 307.] That request will be addressed in a separate order.

- 1 -

injury to goods however caused unless such loss or injury results from the negligence or willful misconduct of ProTrans or its agents or employees.'" [Dkt. 79 at 4 (quoting dkt. 34-1 at 5).] The Services Agreement also contains a fee-shifting provision providing that "[Isovolta] and ProTrans agree to pay the prevailing parties' reasonable costs, including attorney fees, incurred by such party in enforcing this Agreement." [Dkt. 34-1 at 6.]

Isovolta submitted a proof of loss to ProTrans for $104,356.06 in April 2008. When that was not paid, Isovolta filed a Complaint against ProTrans for breach of contract and negligence in October 2008. [Dkt. 1.] ProTrans' Answer to Isovolta's Complaint asserted various affirmative defenses, including that Isovolta's damages were caused by the negligent actions or omissions of non-parties Firecheck of Texas ("Firecheck"), Tyco International, Ltd., and/or Simplex-Grinnell, LLC. [Dkt. 29 at 6.]

In May 2009, Isovolta filed an Amended Complaint against ProTrans that withdrew the negligence cause of action but maintained the breach of contract cause of action. [Dkt. 41.] ProTrans reasserted the same non-party affirmative defenses in response to Isovolta's Amended Complaint. [Dkt. 50 at 5.]

On October 12, 2009, Isovolta moved to amend its complaint a second time, to which ProTrans did not object. [Dkts. 80; 84.] Isovolta's Second Amended Complaint asserted a breach of contract claim against ProTrans, product liability and negligence claims against Tyco Fire Products LP ("Tyco"), and a negligence claim against Firecheck. [Dkt. 85.] Discovery ensued, and almost one year later, Isovolta settled with Firecheck, and Firecheck was dismissed from the case. [Dkt. 171.] The remaining parties—Isovolta, ProTrans, and Tyco—filed a total of five summary judgment motions resulting in four opinions from this Court. [Dkts. 203; 204; 205; and 217.] The Court denied Isovolta and ProTrans' requests for summary judgment, find-

ing that issues of material fact remained to be decided by a jury. [Dkts. 203; 204.] The Court granted summary judgment in favor of Tyco on Isovolta's claims against it. [Dkt. 217.]

The Court held a jury trial on Isovolta's breach of contract claim against ProTrans in May 2011. [Dkts. 293; 295; 296; and 299.] Isovolta asked the jury to award it approximately $130,000 in closing argument. The jury found in favor of Isovolta and awarded it $6,500 in damages. [Dkt. 301.] The parties agreed after the trial that the Court should address Isovolta's anticipated fee requested before the entry of final judgment. [Dkt. 308 at 4.]

Isovolta now requests attorney's fees and costs pursuant to the fee-shifting provision in its contract with ProTrans. Specifically, Isovolta requests that the Court award it $348,796.58 in attorney's fees that Isovolta has already paid, $61,605.58 in costs, and $15,000 in attorney's fees it anticipates incurring. [Dkt. 308 at 1.]

## II.
### STANDARD OF REVIEW

This Court has diversity jurisdiction over this matter. In diversity cases, state law governs the grant of attorney's fees. *Jackman v. WMAC Inv. Corp.*, 809 F.2d 377, 383 (7th Cir. 1987). The parties agree that Indiana law applies here.

It is well-established in Indiana that parties are permitted to enter into agreements containing a fee-shifting provision as long as the provision does not violate public policy. *Walton v. Claybridge Homeowners Ass'n, Inc.*, 825 N.E.2d 818, 824-25 (Ind. Ct. App. 2005). The purpose of such a provision is "to make the prevailing party to a contract whole." *Id.* at 825. If a fee-shifting provision limits recovery of fees to certain claims, however, the district court must limit the fee award accordingly. *Digitech Computer, Inc. v. Trans-Care, Inc.*, 646 F.3d 413 (7th Cir. 2011) (applying Indiana law in diversity action and concluding that district court "correctly limited Digitech's award of attorneys' fees to those relating to the breach of contract action, ex-

cluding Digitech's attorneys' fees relating to Trans-Care's fraud counterclaims"); *see also Burras v. Canal Construction & Design Co.*, 470 N.E.2d 1362, 1370 (Ind. Ct. App. 1984) (limiting an award of attorney's fees to the terms expressly provided in the contract). Under Indiana law, a court abuses its discretion if it reduces an otherwise reasonable fee request based on the amount of the judgment. *Gerstbauer v. Styers*, 898 N.E.2d 369, 380 (Ind. Ct. App. 2008) (citation omitted).

As Isovolta points out, [dkt. 308 at 13], the United States Supreme Court recently emphasized that the determination of fees "should not result in a second major litigation." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011). While it is the fee applicant's burden to submit appropriate documentation to meet the burden of establishing entitlement to an award, the Court "need not, and indeed should not, become green-eyeshade accountants." *Id.* Instead, the essential goal in shifting fees to either party is to do "rough justice, not to achieve auditing perfection[;]" the Court may take into account its "overall sense of the suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

### III.
#### DISCUSSION

The parties' agreement will control the Court's determination of the instant motion. It provides: "[Isovolta] and ProTrans agree to pay the prevailing parties' reasonable costs, including attorney fees, incurred by such party in enforcing this Agreement." There are three issues raised by the contract terms: whether Isovolta is the prevailing party, whether the requested fees were incurred in enforcing the parties' agreement, and whether the requested fees are reasonable. The Court will address each of those issues.

### A. Prevailing Party

Isovolta and ProTrans dispute whether Isovolta was the prevailing party. The parties' contract does not define the term "prevailing party." Isovolta argues that it is the prevailing party for purposes of the contractual fee-shifting provision because the jury entered judgment in its favor. [Dkt. 308 at 8.] While ProTrans does not dispute that the jury entered judgment in favor of Isovolta, it contends that Isovolta is not the prevailing party because it only recovered 5% of the damages it sought. [Dkt. 321 at 3.] Therefore, ProTrans asks the Court to deny Isovolta's fee petition in its entirety "in recognition of the fact that there are no winners in this case and that any award of fees or costs to Isovolta would therefore be unreasonable." [Dkt. 321 at 2.]

The parties dispute the applicability of the Indiana Supreme Court's definition of "prevailing party" in *Reuille v. E.E. Brandenberger Construction, Inc*. 888 N.E.2d 770 (Ind. 2008). In *Reuille*, the Indiana Supreme Court held that a party who settled a claim by mediation did not prevail for purposes of a contractual fee-shifting provision. In support of that conclusion, *Reuille* quoted the definition of "prevailing party" from the edition of Black's Law Dictionary in effect at the time the parties therein executed the contract:

> "The party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention. The one in whose favor the decision or verdict is rendered and judgment entered."

*Id.* (quoting Black's Law Dictionary 1188 (6th ed. 1990)). *Reuille* emphasizes that the cited definition "appears to contemplate a trial on the merits and entry of a favorable judgment in order to obtain prevailing party status" and that one of the purposes of mediation "is to provide an atmosphere in which neither party feels that he or she has 'lost' or 'won' a case." 888 N.E.2d at 771-72.

ProTrans argues that *Reuille* did not decide whether a party that receives much less than it requested after a jury trial is the "prevailing party" and that this "remains an open question in Indiana."[2] [Dkt. 321 at 5.] The Court rejects ProTrans' argument. The Indiana Supreme Court expressly stated that the cited definition contemplated a trial on the merits and a judgment in favor of the movant. It is undisputed that a trial on the merits occurred in this case, and ProTrans does not dispute that the jury entered its verdict in favor of Isovolta. [*See* dkt. 301 (signed "Verdict for Plaintiff" form, finding "in favor of the Plaintiff, Isovolta, Inc., and against the Defendant ProTrans International, Inc.").] Therefore, based on the Indiana Supreme Court's rationale in *Reuille*, Isovolta is the prevailing party.

The definition of the term "prevailing party" in the edition of Black's Law Dictionary in effect at the time ProTrans and Isovolta executed the Services Agreement bolsters this Court's conclusion.[3] It defines a "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded." Black's Law Dictionary 1154 (8th ed. 2004). Again, it is undisputed that the jury rendered a judgment in favor of Isovolta, and the applicable definition disregards the amount of damages awarded.

For these reasons, the Court concludes that Isovolta is the prevailing party for purposes of the fee-shifting provision in the parties' contract. Therefore, the Court rejects ProTrans' request to outright deny Isovolta's fee petition because the jury awarded Isovolta less than what it requested.

---

[2] ProTrans refers to Isovolta's damages award as a "nominal award." [Dkt. 321 at 5.] Although Isovolta was not awarded the amount it requested, the damages the jury awarded it were not nominal and the jury undoubtedly entered judgment in favor of Isovolta. [Dkt. 301 (jury verdict in favor of Isovolta).]

[3] The eighth edition of Black's Law Dictionary was published in 2004 and the ninth edition was published in 2009; therefore, the eighth edition was in effect at the time Isovolta and ProTrans executed the Services Agreement in 2006.

### B. Limitation on Recovery in Fee-Shifting Provision

#### 1. Fees Incurred in Enforcing the Agreement

Isovolta and ProTrans dispute the amount of fees Isovolta can recover pursuant to the fee-shifting provision of the parties' contract. The parties' contract limits the prevailing party's recovery to "reasonable costs, including attorney fees, *incurred by such party in enforcing this Agreement*." [Dkt. 34-1 at 6 (emphasis added).] ProTrans argues that this language prevents Isovolta's recovery of fees or costs incurred pursuing claims against Firecheck or Tyco because those claims were not pursued to enforce Isovolta's agreement with ProTrans.

Isovolta does not argue that the limitation in the fee-shifting provision is ambiguous or that it entitles Isovolta to recover all fees and costs incurred in this litigation. In fact, Isovolta concedes that fees it incurred related to discovery on the issue of lost profits must be excluded because "Isovolta's sole purpose in obtaining that discovery was in support of a lost profits remedy from parties other than ProTrans." [Dkts. 309 at 1 ¶ 2(b); 309-1 at 4 (Isovolta's "Excluded Attorney Fees" totaling $9,207.32).] Aside from this concession, however, Isovolta requests reimbursement for the remainder of the expenses it incurred pursuing its claims against Firecheck and Tyco, arguing that ProTrans asserted affirmative defenses implicating those parties and bringing them into the litigation.

Whether a party is entitled to attorney's fees and costs under a contractual fee-shifting provision is a question of law for the Court. *Cintas Corp. v. Perry*, 517 F.3d 459, 468 (7th Cir. 2008). If a contract is clear and unambiguous, the language therein must be given its plain meaning. *Wagner v. Yates*, 912 N.E.2d 805, 810 (Ind. 2009). Courts should interpret a contract so as to harmonize its provisions rather than to place them in conflict. *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 252 (Ind. 2005). If a fee-shifting provision limits recovery of fees to

certain claims, the district court must limit the fee award accordingly. *Digitech Computer, Inc.*, 646 F.3d at 413; *see also Burras*, 470 N.E.2d at 1370.

Isovolta correctly points out that ProTrans asserted affirmative defenses against Firecheck and Tyco, which brought issues regarding those parties into the litigation. [Dkt. 308 at 11.] What Isovolta fails to acknowledge, however, is that when it moved to amend its complaint to assert claims for negligence and products liability against Firecheck and Tyco, Isovolta undertook a burden to prove its claims against those parties. Its claims were, thus, independent of ProTrans' affirmative defenses regarding those parties because pursuit of those claims was not to enforce its contract with ProTrans, it was to seek recovery from other parties.[4] [Dkt. 80 ("Isovolta's Motion for Leave to File Second Amended Complaint Adding Direct Claims Against Firecheck of Texas, Inc. and Tyco Fire Products LP") (filed October 12, 2009).] Therefore, the Court agrees with ProTrans that Isovolta cannot recover attorney's fees or costs incurred pursuing its independent claims against Tyco and Firecheck because it was not "enforcing" its contract with ProTrans by pursuing those claims.

### 2. Determining Amount Isovolta Can Recover Enforcing Contract Against ProTrans

The Court must then determine how best to exclude the fees and expenses Isovolta incurred pursuing its claims against Firecheck and Tyco from Isovolta's fee request. ProTrans proposes an apportionment and exclusion method. Isovolta challenges the concept, but not the

---

[4] In addition to the limitation in the fee-shifting provision, the Services Agreement expressly provides that ProTrans "shall not be liable for any loss or injury to goods however caused unless such loss or injury results from the negligence or willful misconduct of ProTrans or its agents or employees." [Dkt. 34-1 at 5.] Interpreting the contract to harmonize those provisions instead of place them in conflict, it is clear that the parties intended for the contract to only govern the relationship, liability, and recovery between ProTrans and Isovolta. Firecheck and Tyco were not parties to that contract, and Isovolta's independent pursuit of claims against those parties was not done to enforce the contract.

amount, of apportionment that ProTrans has proposed. Isovolta does not propose an alternative method, other than awarding it the full amount of its request.

### a. ProTrans' Proposed Methodology

As ProTrans points out, most of Isovolta's counsel's time entries for the periods when there were multiple parties in the case are block billed, which makes it difficult (if not impossible) to distinguish tasks that were related to Isovolta enforcing the contract against ProTrans from tasks that were related to Isovolta's independent claims against Firecheck and Tyco. Therefore, ProTrans proposes various time periods based on the number of defendants involved in the case and asks the Court to only hold ProTrans responsible for a portion of the fees Isovolta incurred based on the number of defendants involved during the corresponding time period:[5]

**ProTrans' Proposed Apportionment of Fees and Costs**

|   | Time Period Starts | Time Period Ends | Defendants in Litigation | ProTrans' Proposed Portion of Fees |
|---|---|---|---|---|
| 1 | October 1, 2008 (Complaint filed) | September 28, 2009 | ProTrans | 100% |
| 2 | September 29, 2009[6] | September 23, 2010 (Firecheck dismissed) | ProTrans, Firecheck, & Tyco | 33.3% |
| 3 | September 24, 2010 | February 14, 2011 (Tyco dismissed) | ProTrans & Tyco | 50% |
| 4 | February 15, 2011 | June 14, 2011 (last billing entry) | ProTrans | 100% |

---

[5] Although ProTrans only proposes the second and third time period detailed in the chart, [dkt. 321-1 at 2-3], it does not challenge either the fees Isovolta incurred before Isovolta moved to amend its complaint to assert independent claims against Firecheck and Tyco or the fees Isovolta incurred after Tyco was dismissed from the case on February 14, 2011. [Dkt. 321-1 at 2 ("ProTrans does not contest time entries not highlighted.").] Therefore, ProTrans implicitly proposes four time periods for which to apportion fees and acknowledges that it is responsible for 100% of the fees Isovolta incurred during the first and fourth time periods.

[6] ProTrans starts the second time period on September 29, 2009, noting that date was "days before Isovolta filed its motion for leave to file a second amended complaint." [Dkt. 321-1 at 2.] It is unclear why ProTrans starts the time period that day instead of on October 12, 2009—the date on which Isovolta actually moved for leave to file its second amended complaint. [Dkt. 80.]

- 9 -

ProTrans also conducts a thorough review of the time entries from periods where there were multiple defendants and highlighted the entries where it is clear that the fees or costs were incurred exclusively for Isovolta's pursuit of its claims against Firecheck or Tyco. [Dkts. 321-3 to 321-8.] ProTrans contends that in addition to the fee apportionment detailed in the chart, it should not be responsible for any of the identified fees that relate exclusively to Firecheck or Tyco. [*See, e.g.*, dkt. 321-4 at 3 (blue highlighting on product liability research and Tyco summary judgment preparation).]

ProTrans proposes the same apportionment and reduction methodology for the costs Isovolta seeks. [Dkt. 321-1 at 3-4.] Based on its proposal, ProTrans asks the Court to reduce Isovolta's fee request by $114,259.14 and its expense request by $37,257.10.

### b. Isovolta's Response to ProTrans' Proposed Methodology

In its reply, Isovolta argues that by conceding fractional liability for each of the block billed entries, ProTrans concedes that all of the tasks were reasonable and necessary to enforce the parties' agreement. [Dkt. 323 at 5, 7.] Therefore, Isovolta reasserts that ProTrans is liable for all of Isovolta's fees and expenses, including those that Isovolta incurred pursuing its claims against Firecheck and Tyco.

Other than awarding it the full amount of its request, Isovolta does not propose an alternative method for calculating the amount of fees it incurred enforcing the contract against ProTrans. Isovolta does not specifically challenge the classification of any of the entries ProTrans highlighted, ProTrans' mathematical calculation regarding the total amount of fees it proposes to exclude, or the equal distribution of the fees between the number of remaining defendants in the case (i.e., 33.3%, 50%, or 100% based on the number of defendants).

### c. Proper Amount of Apportionment Deduction

The Court has already concluded that Isovolta is entitled to reasonable attorney's fees and costs incurred enforcing the contract with ProTrans but that it cannot recover attorney's fees or costs incurred pursuing independent claims against Firecheck or Tyco. Isovolta's contention that it is entitled to full compensation because ProTrans has conceded a portion of the block-billed fees does not comply with Indiana law, which requires the Court to limit a fee award according to the contractual language of the fee-shifting provision. *See Digitech Computer, Inc.*, 646 F.3d at 413 (applying Indiana law in diversity suit to hold that if a fee-shifting provision limits recovery of fees to certain claims, the district court must limit the fee award accordingly). It is beyond dispute that some of the fees Isovolta included in its fee petition against ProTrans (e.g., its unsuccessful summary judgment motion against Tyco) were incurred solely for Isovolta's pursuit of those parties and, thus, are not recoverable. Therefore, the Court rejects Isovolta's argument that it is entitled to a full recovery of fees because ProTrans conceded limited liability for a portion of the requested fees.

Because Isovolta chose to block bill its time, it is not possible for the Court to determine the exact amount Isovolta incurred enforcing the contract or to exclude the exact amount Isovolta incurred pursuing its claims against Firecheck and Tyco. But, for two reasons, this does not preclude Isovolta from recovering a portion of the block-billed fees. First, ProTrans concedes[7] that it is liable for at least one-third of the block-billed fees Isovolta incurred when Firecheck and Tyco were its co-defendants and at least one-half of the fees Isovolta incurred when Tyco was its co-defendant. [Dkt. 321-1 at 2-3.] Second, as detailed previously, the United States Supreme

---

[7] The Court acknowledges that ProTrans' concession is an alternative argument to its main assertion that Isovolta was not a prevailing party, but because the Court has rejected that assertion, its concession stands.

Court recently emphasized that the Court should focus on doing "rough justice" not on achieving auditing perfection. *Fox*, 131 S.Ct. at 2216. Therefore, the fact that the Court cannot conclusively determine the exact amount of fees Isovolta incurred pursuing its claims against Firecheck and Tyco in the block-billed time entries does not outright preclude recovery in this case. *See Rexam Bev. Can Co. v. Bolger*, 620 F.3d 718, 737, 739 (7th Cir. 2009) (affirming district court applying Illinois law for employing "practical solution" to a fee division problem by "excluding items clearly attributable to the extracontractual claims" and removing one-third of fees accrued before non-contractual claims became "intertwined" with contractual claims).

Based on its overall sense of the suit, including ProTrans' concession regarding its responsibility for a portion of the block-billed fees and Isovolta's failure to present an alternative that complies with Indiana law, the Court concludes that ProTrans' apportionment methodology is a practical solution to the problem posed by the interaction between the parties' fee-shifting provision and Isovolta's block billing. The Court disagrees with ProTrans, however, regarding the start date of the second time period, finding that instead of it starting "days before Isovolta filed its motion for leave to file a second amended complaint," [dkt. 321-1 at 2], it should start the day Isovolta actually filed that motion—October 12, 2009.[8] Therefore, the Court modifies ProTrans' proposed apportionment as follows:

---

[8] This modification results in the reduction of attorney's fees being $1,108.57 less than what ProTrans proposed and the reduction for costs being $2.50 less than what ProTrans proposed. [*See* dkt. 321-2 at 2, 4 ($1,108.57 of time entries between September 29, 2009 and October 11, 2009 for which ProTrans erroneously deducted fees); dkt. 321-9 at 4 ($2.50 photocopy cost incurred on September 10, 2009 that ProTrans erroneously deducted).]

**Court's General Apportionment of Fees and Costs**

|   | Time Period Starts | Time Period Ends | Defendants in Litigation | ProTrans' Portion of Fees |
|---|---|---|---|---|
| 1 | October 1, 2008 (Complaint filed) | October 11, 2009 | ProTrans | 100% |
| 2 | October 12, 2009 (Isovolta Second Amended Complaint filed) | September 23, 2010 (Firecheck dismissed) | ProTrans, Firecheck, & Tyco | 33.3% |
| 3 | September 24, 2010 | February 14, 2011 (Tyco dismissed) | ProTrans & Tyco | 50% |
| 4 | February 15, 2011 | June 14, 2011 (last billing entry) | ProTrans | 100% |

The Court also deducts the fees and expenses ProTrans identified as being incurred by Isovolta exclusively to pursue its independent claims against Firecheck or Tyco. [Dkts. 321-3 to 321-8 (blue highlighting).] Isovolta cannot recover these expenses under the fee-shifting provision of its contract with ProTrans, and it does not challenge the classification of any of the entries ProTrans highlighted or ProTrans' mathematical calculation regarding the total amount of fees it proposed to be excluded. Additionally, the Court has reviewed the time entries ProTrans excludes and agrees with ProTrans' assessment.

Based on this apportionment (with the Court's modification of the start date for the second time period) and the exclusions for the identifiable Tyco or Firecheck entries, the Court deducts $113,150.57 of attorney's fees from Isovolta's request and $37,254.60 of costs.

**C. Reasonableness of Remaining Request**

Based on the reductions detailed in the previous section, Isovolta's request for attorney fees is reduced to $235,646.01 and its request for costs is reduced to $24,350.98. The Court must now determine whether that request is reasonable.

The party requesting the fee award bears the burden of proving the reasonableness of the fee. *Spegon v. Catholic Bishop*, 175 F.3d 544, 550 (7th Cir. 1999) (citation omitted). In the Se-

venth Circuit, "the best evidence of whether attorney's fees are reasonable is whether a party has paid them." *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008) (citation omitted); *see also Balcor Real Estate Holdings v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996) ("the best guarantee of reasonableness is willingness to pay"). Presenting evidence that the petitioner paid its fees before the jury reached a verdict in its favor also supports the reasonableness of the fee. *Balcor*, 73 F.3d at 153.

As previously indicated, it is well-established in Indiana that the purpose of a fee-shifting provision is "to make the prevailing party to a contract whole." *Walton*, 825 N.E.2d at 825. A court abuses its discretion if it reduces an otherwise reasonable fee request based on the amount of the judgment. *Gerstbauer*, 898 N.E.2d at 380. If a plaintiff is requesting fees, it is essential to focus on the effort required to overcome the defendant's opposition. *Allied Enters., Inc. v. Exide Corp.*, 2002 U.S. Dist. LEXIS 4553, *12 (S.D. Ind. 2002) (applying Indiana law). A defendant is entitled to "litigate [a] case to the hilt, but having done so, it cannot now complain that [Plaintiff's] counsel had to spend too much time on the case in comparison to ultimate damages recovered." *Id.* at *13.

Aside from its request to deny Isovolta's fee request outright, which the Court has already rejected, ProTrans does not challenge the reasonableness of the amount of fees remaining after the apportionment and exclusion method it proposes. Specifically, ProTrans does not challenge the billable rates of the Isovolta attorneys or paralegal that staffed the case or the amount of time any of those professionals spent on any task. And, as previously noted, ProTrans does not challenge either the fees or costs Isovolta incurred before it amended its complaint to assert independent claims against Firecheck and Tyco or the fees or costs it incurred after the date the last of those parties was a defendant in the case (February 14, 2011).

Pursuant to Indiana law detailed above, Isovolta is entitled to be made whole for the reasonable fees and costs expended enforcing the contract with ProTrans pursuant to the fee-shifting provision. The fact that the jury awarded Isovolta less than its request and much less than the amount of fees it now seeks to recover does not preclude a hefty fee award in favor of Isovolta. One of the key indicators of reasonableness is that Isovolta has already paid the requested amount of legal fees and costs. [Dkts. 324; 324-1.] Moreover, the evidence establishes that Isovolta actually paid those fees and costs as they were incurred before the jury reached a verdict in its favor. [*See, e.g.*, dkt. 324-1 at 1.] This evidence strongly favors a conclusion that the requested amount of fees is reasonable.

Additionally, it is clear that ProTrans' all-or-nothing litigation strategy forced Isovolta to expend great expense to pursue its claim against ProTrans. After the incident damaging the goods in ProTrans' possession, Isovolta submitted a proof of loss to ProTrans in April 2008 for $104,356.06. ProTrans does not dispute that it <u>did not offer anything</u> to Isovolta to settle this case until January 2011—more than two years into this litigation—when it offered Isovolta $15,000 (14% of Isovolta's proof of loss). [Dkt. 308 at 7.] By that time, Isovolta and ProTrans had already conducted extensive discovery[9] and briefed four summary judgment motions. [Dkts. 32; 127; 167; 180.]

It was ProTrans' choice to litigate this case to the hilt and hang its hat on the hope that a reasonable jury would issue a complete defense verdict. But this strategy—particularly ProTrans' decision to forgo making or accepting meaningful settlement offers—forced Isovolta to incur substantial fees to pursue its claim against ProTrans. ProTrans was aware of the fee-shifting provision in its contract with Isovolta, as shown by its demand in February 2010 that

---

[9] ProTrans' witness list contained 48 named witnesses, many of whom were located outside the state of Indiana. [Dkt. 188.]

Isovolta pay ProTrans $107,097.10 <u>to compensate ProTrans</u> for the fees incurred to that date. [Dkt. 308 at 6.] As Isovolta emphasizes, the fees ProTrans had incurred by that date—sixteen months into the litigation and fifteen months before the case was tried—were already higher than the amount of Isovolta's proof of loss submitted to ProTrans in April 2008. Having chosen this strategy and being aware of the applicable fee-shifting provision, ProTrans cannot now complain that Isovolta's fees were too high given the amount of the jury's verdict. Isovolta was the prevailing party and is entitled to be made whole pursuant to the parties' contract, especially in light of applicable Indiana law directing courts not to reduce a fee request based on the amount of judgment.

For these reasons, the Court concludes that the amount of Isovolta's request is reasonable after the reduction for party apportionment and the exclusions based on identifiable non-recoverable entries. Therefore, the Court awards Isovolta $235,646.01 in attorney's fees and $24,350.98 in costs.[10]

### D. Effect of Fee-Shifting Provisions on Litigation

This case compels the Court to briefly comment about the practical effect of fee-shifting provisions on litigation. Through its experience, both in this case and in others, the Court has observed that the presence of contractual fee-shifting provisions often hinders a party's realistic assessment of its case, emboldening it to litigate aggressively on the hope that it will ultimately

---

[10] Isovolta summarily requests $15,000 "for fees it anticipates incurring from June 14, 2011 forward." [Dkt. 308.] ProTrans objects to Isovolta's unsupported request. [Dkt. 321 at 4.] Isovolta does not detail how it arrived at the $15,000 figure or cite any authority supporting its request for anticipated fees. It has not submitted any post- June 14, 2011 bills it has received from its counsel detailing the tasks for which it was billed, and it did not reply to ProTrans' objection to the unsupported request. The Court construes Isovolta's silence as an acceptance of the merits of the objection and, therefore, denies Isovolta's request for $15,000 of anticipated fees. *See Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008) ("[O]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.").

prevail and recover all of its attorney's fees. As illustrated by ProTrans' unsuccessful strategy, this impaired judgment can instead lead to a regrettable outcome where, in addition to its own legal fees, the aggressive party ends up paying its opponent a significantly higher sum than it would have paid had it simply accepted its opponent's initial demand or meaningfully negotiated a middle ground. Put plainly, a loser pays twice. If ProTrans' $107,097.10 demand in February 2010 to cover its own attorney's fees is any indicator of the fees it ultimately incurred to take this case to trial in May 2011, ProTrans' own legal expenses ended up being a multiple of the $104,356.06 proof of loss Isovolta presented to it in April 2008. The irony that the amount of the adverse fee award is more than twice Isovolta's original proof of loss is obvious.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **GRANTS IN PART** Isovolta's Motion for Fees and Costs, [dkt. 308], and **ORDERS** ProTrans to pay Isovolta **$235,646.01** in attorney's fees and **$24,350.98** in costs. These amounts will be included in the Final Judgment issued this date.

09/14/2011

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Scott J. Brown
CASSIDAY SCHADE LLP
sjb@cassiday.com

Braden Kenneth Core
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
bcore@scopelitis.com

Eric K. Habig
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
ehabig@scopelitis.com

Lia M. Hanson
STUART & BRANIGIN LLP
lmh@stuartlaw.com

Katharine Hoyne Hosty
CASSIDAY & SCHADE LLP
khh@cassiday.com

Brent Emerson Inabnit
SOPKO NUSSBAUM INABNIT & KACZMAREK
brenti@sni-law.com

William P. Kealey
STUART & BRANIGIN
wpk@stuartlaw.com

Brandon J. Kroft
CASSIDAY SCHADE LLP
bjk@cassiday.com

John Mathews Stuckey
STUART & BRANIGIN LLP
jms@stuartlaw.com

Emily J. O. Sullivan
SHOOK HARDY & BACON L.L.P.
ejsullivan@shb.com

Stanley Yorsz
BUCHANAN INGERSOLL & ROONEY PC
stanley.yorsz@bipc.com